Hope SLADE, Next Friend of Olivia Zink, a Minor, and Hope Slade, as an Individual, Plaintiffs,

v.

WHITCO CORP., Defendant.

No. 87–CV–587.

United States District Court, N.D. New York.

Jan. 26, 1993.

O'Connell and Aronowitz, Albany, NY (Stephen R. Coffey, Thomas J. DiNovo, of counsel), for plaintiff.

Donohue, Sabo, Varley & Armstrong, Albany, NY (Alvin O. Sabo, Fred J. Hutchison, of counsel), for defendant.

## AMENDED MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. *Introduction.*

On January 28, 1983, the plaintiff, Olivia Slade, sustained catastrophic injuries in an automobile accident which occurred in the Town of Sandgate, Vermont. On that date, she was three years old, and was a passenger in a 1976 Jeep CJ–7 being operated by her mother, Hope Slade. The vehicle went off the side of the road, over a culvert, and came to rest in a ditch. Plaintiff was thrown out of the vehicle and was pinned under the left rear tire, face down in slush which had accumulated in the ditch. She remained in that position for several minutes. As a result, she sustained severe permanent brain damage and became a quadriplegic. She was twelve years old at the time of trial, and is now thirteen years old. She will require constant care for the rest of her life.

Prior to trial, the plaintiff received total settlements in the sum of $2,249,059.38 from the owner and the manufacturer of the Jeep. The case was discontinued or dismissed against other defendants. Hope Slade discontinued her individual claims. As a result, upon submission to the jury, the sole plaintiff was Olivia Slade, and the sole remaining defendant was Whitco Corp. ("Whitco"), the designer and manufacturer of the soft top/door system on the Jeep.

The case was tried in Albany between November 16, 1992, and December 3, 1992. At the conclusion of the trial, the jury returned a verdict in favor of the plaintiff. Whitco was found liable on all causes of action in negligence, strict liability, and breach of warranty. The jury awarded total damages of $20,500,000.00 which consisted of $3,000,000.00 for past pain and suffering; $3,000,000.00 for future pain and suffering; and $14,500,000.00 as the present value of future economic loss. After making a reduction for the prior settlements, judgment was entered in favor of the plaintiff and against Whitco in the sum of $18,250,940.62.

## II. *Motions.*

Whitco has moved for an order pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, setting aside the verdict in favor of the plaintiff and the judgment entered thereon, and directing that judgment be entered in favor of Whitco on the ground that the jury's verdict was against the weight of the evidence. In the alternative, Whitco has also moved for an order pursuant to Rule 59 of the Federal Rules of Civil Procedure, setting aside the verdict and the judgment entered thereon, and granting Whitco a new trial on the grounds that the jury's verdict was against the weight of the evidence, and that the damages awarded by the jury were excessive.

The court issued a memorandum-decision and order dated January 8, 1993, 810 F.Supp. 396, granting in part and denying in part defendant's motion for a judgment n.o.v., or in the alternative, a motion for a new trial. This amended order is intended to allow the plaintiff an opportunity to accept a remittitur in lieu of a new trial on the issue of future economic loss.

## III. *Discussion.*

### A. Rule 50.

■ Rule 50 of the Federal Rules of Civil Procedure provides in pertinent part:

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial.** Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

"The standard for granting a motion for judgment n.o.v. pursuant to 50(b) is whether 'the evidence, viewed in the light most favorable to the nonmovants without considering credibility or weight, reasonably permits only a conclusion in the movants favor.'" *Jund v. Town of Hempstead,* 941 F.2d 1271, 1290 (2d Cir.1991) (citations omitted); *see also Oakley v. Consolidated Rail Corp.,* 1992 WL 198087, * 3–4, 1992 U.S.Dist. LEXIS 12142, * 9–10 (N.D.N.Y. 1992); *Jones v. Lederle Laboratories, Div. of American Cyanamid Co,* 785 F.Supp. 1123, 1125 (E.D.N.Y.1992), *aff'd* 982 F.2d 63 (2d Cir.1992). A "judgment n.o.v. is reserved for those rare occasions when there is 'such complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture' or the evidence must be so overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Sorlucco v. New York City Police Department,* 971 F.2d 864, 871 (2d Cir.1992) (citations omitted).

Procedurally, in order to bring a Fed. R.Civ.P. 50(b) motion post trial, "[t]he moving party must have sought judgment as a matter of law in accordance with subsection (a)(2) *before the case was submitted to*

*the jury,"* and must thereafter renew the same under 50(b) by filing a motion "within ten days after entry of the judgment on the jury's verdict." *Oakley, supra,* 1992 WL 198087, at * 4, 1992 U.S.Dist. LEXIS 12142, at * 10 (emphasis added); *see also Dixon v. Aragona,* 1992 WL 107360, 1992 U.S.Dist. LEXIS 6735 (N.D.N.Y.1992).

Whitco moved for a directed verdict at the close of the plaintiff's case and at the conclusion of all the evidence. This motion, pursuant to Section 50(b), was preserved for review, and having been made within ten days of entry of judgment will be addressed on its merits.

The central liability issue at trial was whether Whitco, as designer and manufacturer of the soft top/door system for the manufacturer of the Jeep, negligently designed the system so as to cause the plaintiff to be ejected from the vehicle at the time of the accident, thereby sustaining her personal injuries. The other issue was whether or not Whitco retained sufficient independent control over the design of the soft/top door system to expose it to liability. Both issues were resolved against Whitco. There was conflicting evidence which included the testimony of experts on both sides. The resolution of conflicting evidence and the credibility of the witnesses was a question for the jury. *Vasbinder v. Ambach,* 926 F.2d 1333, 1339 (2d Cir. 1991). To set aside a jury verdict as against the weight of the evidence, Whitco must establish that the verdict could not be supported by any fair interpretation of the evidence. *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038–39 (2d Cir.1992). Whitco has failed to meet that burden. The court finds that the liability verdicts were not the result of passion or prejudice, and did not constitute a miscarriage of justice. *Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1327 (2d Cir. 1990). Rather, the court finds that the jury's determination on liability was justifiable in light of the evidence presented at trial. The motion is denied inasmuch as it seeks relief under Rule 50(b) of the Federal Rules of Civil Procedure.

**B. Rule 59.**

■ Rule 50(b) allows a motion for a new trial pursuant to Fed.R.Civ.P. 59 to be joined with it or to be sought in the alternative. Rule 59 provides in pertinent part:

**(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States:

. . .

**(b) Time for Motion.** A motion for a new trial shall be served not later than 10 days after the entry of the judgment.

"A less stringent standard applies to a motion for a new trial," *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987), than to a motion for judgment as a matter of law. "The district court's grant of a new trial motion is usually warranted only if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Sorlucco,* 971 F.2d at 875 (*quoting Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)); *see Oakley, supra.*

Like a motion under Fed.R.Civ.P. 50(b), a motion under Fed.R.Civ.P. 59 must be made "not later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(b). The defendant has timely filed and preserved its Rule 59 motion for review on the merits.

For the same reasons set forth above, the jury's verdict on liability was supported by a fair interpretation of the evidence. As such, the motion is denied as much as it seeks relief on the issue of liability under Federal Rules of Civil Procedure Section 59(b).

The court will now turn to the issue of whether or not the damages awarded by the jury in their verdict were excessive.

"To determine whether an award of damages is shockingly excessive when the law of a particular state is applied, we must examine and compare the challenged award with awards made in similar cases in the

courts of that state." *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1058 (2d Cir. 1990). The reason that a court should look to awards in other cases is that "jury verdicts and judicial opinions approving them, when considered over a period of time, provide 'some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation to be awarded.'" *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 750 (2d Cir.1984) (*quoting Senko v. Fonda*, 53 A.D.2d 638, 639, 384 N.Y.S.2d 849, 851–52 (2d Dept.1976)). These cases are used "as a point of reference by which to gauge the appropriateness of the award." *Matthews v. CTI Container Transport Int'l Inc.*, 871 F.2d 270, 278 (2d Cir.1989); *Raucci*, 902 F.2d at 1058; *Fuentes v. Consolidated Rail Corp.*, 789 F.Supp. 638, 645 (S.D.N.Y. 1992).

 District Judge Con G. Cholakis previously ruled that the laws of Vermont would be applicable to this case. Because the injuries sustained by the plaintiff are so catastrophic, the court has been unable to find any reported cases in Vermont which are compatible. She will be confined to a wheelchair for the remainder of her life. She has undergone numerous operations and needs care around the clock from her mother and through the aid of the State of Vermont. Although she is now thirteen years old, she is believed to have the mental capacity of someone who is age 19 to 28 months. She is conscious and experiences pain and pleasure. There were almost ten years between the date of the accident and the date of the jury verdict, and the court is not shocked by the award of $3,000,000.00 for past pain and suffering. Nor is the court shocked by the $3,000,000.00 awarded for future pain and suffering which was assessed against Whitco. *See Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978).

 The plaintiff's economic expert with regard to the present value of future economic loss was Thomas R. Kershner, Ph.D. ("Kershner"). He testified that the present value of the future economic loss which the plaintiff will incur for medical expenses and other expenses related to her injuries, together with the loss of earnings as a high school graduate, would total $14,983,-932.00. If she did not graduate from high school, the projected loss would total $14,-686,355.00. As noted above, the jury returned a verdict of $14,500,000.00 on this issue. In effect, the jury almost completely accepted Kershner's testimony *in toto*. The court finds not only that this "award is so high as to shock the judicial conscience and constitutes a denial of justice," *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990), but is against the clear weight of the evidence.[1] A new trial must be ordered on this issue.

 Because of the jury's complete acceptance of Kershner's testimony, the court must examine such testimony to decide if it was based upon an adequate foundation. Kershner's projections were based upon Olivia Slade having a life expectancy of 67 years. In other words, that she is expected to live until age 79. This is the normal life expectancy under the United States Department of Health Life Expectancy charts for a white female, age twelve. The proof that this plaintiff has the same life expectancy as an average white female, age twelve, was extremely weak, at best. No medical expert gave a professional opinion that Olivia Slade or any twelve year old with her condition of severe permanent brain damage and quadriplegic would be expected to live an additional 67 years. The best anyone would say is that Olivia Slade has a normal life expectancy. From that, an impermissible jump was made that Olivia Slade has the same life expectancy as any other twelve year old white female. There was no reasonable basis for this assumption because of the lack of credible evidence regarding the normal life expectancy of a white female, age twelve, who is quadriplegic with severe permanent brain damage. Therefore, to the extent that Kershner's testimo-

---

1. Plaintiff's attorney may also have been shocked by the total award of $20,500,000.00, since he only asked for $20,000,000.00 in his summation.

ny was based upon Olivia Slade now having a life expectancy of 67 years, to age 79, it was without foundation and very speculative.

More important, the verdict itself clearly reflects that the jury did not accept the fact that Olivia Slade now has a life expectancy of 67 years. It awarded her $3,000,-000.00 · for approximately ten years past pain and suffering. In light of that fact, it is not reasonable to assume that the jury would have awarded her only $3,000,000.00 for future pain and suffering if it believed she would live another 67 years. In other words, it is inconsistent to make an award of $3,000,000.00 for ten years of past pain and suffering and only $3,000,000.00 for 67 years of future pain and suffering. It is obvious that the jury did not believe that she has a life expectancy of 67 years, because if so, their verdict on future pain and suffering would have been much higher than $3,000,000.00. The jury awards for past and future pain and suffering are only consistent with their finding of a substantially lower future life expectancy for Olivia Slade than that used by Kershner.

In addition, Kershner testified that $9,872,867.00 of the future economic loss consisted of the cost of services to be provided by a Registered Nurse, Licensed Practice Nurse and home health aid. He based these projections not only on the assumption that Olivia Slade has a life expectancy of 67 years, but also upon the assumption that her mother, Hope Slade, would die tomorrow. This was in the hypothetical question given to him by the plaintiff's attorney.[2] In posing a hypothetical question, it is necessary to assume the existence of facts sufficient to permit the expert to form an opinion or conclusion. *New York Juris 2d Evidence and Witnesses,* § 664 (1986). The theory of Hope Slade's imminent death, as assumed by Kershner, was contrary to the facts in the record. Hope Slade was and is a normal 34 year old white female and has a life expectancy of 45 years and work expectancy of 30 years. For the past ten years, she has been pro-

viding most, if not all, of the services projected by Kershner for an RN, LPN, and home health aid. It is a reasonable assumption that she will continue to provide these services for an extended period of time in the future, and, of course, these services are provided at no financial loss to the plaintiff. The court recognizes that Olivia Slade will need RN, LPN, and home health aid care in the future even if her mother continues to provide some of those services for the next 30 to 45 years. However, this was not the basis upon which Kershner gave his testimony concerning the present value of future economic losses for those services. Therefore, $9,872,-867.00 of the $14,983,932.00 economic loss testified to by Kershner, was in reality based upon speculation on top of speculation. The first speculation was that Olivia Slade would live an additional 67 years, to age 79, and the next speculation was that her mother, Hope Slade, would die tomorrow. Since this represented almost 70% of the award for future economic loss, the jury reached a seriously erroneous result on this issue and it was a miscarriage of justice.

The $14,500,000.00 award of the jury was without proper foundation, and not based upon sufficient credible evidence to be sustained. The plaintiff is entitled to an award for the present value of future economic loss, and that loss will be substantial. However, because that aspect of the verdict was clearly against the weight of the evidence, it cannot stand.

## C. Remittitur.

 Upon further reflection, the court has decided, in its discretion, to also treat Whitco's motion as one for a remittitur of the damages. "A remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984). "A remittitur, in effect, is a statement by the court that it is shocked by

---

**2.** The exact question was: "Assume Hope Slade, ... was to die tomorrow or become so severely disabled she could no longer provide for her daughter, which she does on a round-the-clock basis; assume that were going to happen and assume Olivia is going to need nursing services."

the jury's award of damages." *Ismail*, 899 F.2d at 186. As in a motion for a new trial on the issue that the damages were excessive, in considering a remittitur motion the standard of review "is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978). The court has already made that determination in its Rule 59 decision.

Whitco's economic expert was Anthony Riccardi. On direct examination, he was of the opinion that the present value of the future economic loss to the plaintiff would be approximately $4,000,000.00. This figure was substantially increased during cross examination based upon certain assumptions posed to him by the plaintiff's attorney. As with Kershner, the basic foundation upon which Riccardi testified was flawed. For example, part of his opinion was based upon the plaintiff having a life expectancy of between four and twenty years. This would presumably mean that she would die between ages 16 and 32. This assumption was based upon articles and studies that he had reviewed. These studies were not produced at trial, nor did Whitco produce a medical expert or anyone else to give a professional opinion as to the life expectancy of Olivia Slade or someone in her condition.

With regard to the issue of damages, the court has an obligation and interest to protect the welfare of this infant plaintiff who has been dealt such a cruel blow in life. The court is also mindful of the time, money, effort, and emotional strain of a new trial, not only to the plaintiff and her entire family, but to the defendant as well. Cognizant of this responsibility, the court will now consider the proper amount of a remittitur in light of the evidence introduced at trial.

There are two principal objectives to consider when comparing the possible standards for calculating a remittitur. The first is to enable the parties to avoid the delay and expense of a new trial when the jury award is intrinsically excessive. The second objective is to minimize the extent of the judicial interference with the matter that is otherwise within the jury's domain.

*Earl*, 917 F.2d at 1328 (citations omitted).

■ There are three alternate methods for computing a remittitur. *Earl*, at 1328. First, "reduce the verdict to the lowest amount that could reasonably be found by the jury." 6A *Moore's Federal Practice*, at 59–193. This is the most intrusive method to affect the jury award. Second, reduce the verdict only to the maximum that would be upheld by the trial court if not excessive. *Earl*, at 1328. This is the least intrusive standard. Third, reduce the jury award to what the trial court believes a "properly functioning jury, acting free of suggestions by counsel will have awarded...." *Id*, at 1329 (*quoting Uris v. Gurney's Inn Corp.*, 405 F.Supp. 744, 747 (E.D.N.Y.1975)). This is called an intermediate standard.

■ In the *Earl* decision, the Second Circuit directed that "district courts should use the least intrusive standard for calculating a remittitur. According to that standard, a district court should remit the jury's award only to the maximum amount that would be upheld by the district court as not excessive." *Id*, at 1330. Based upon the evidence produced at trial, the court is of the opinion that the maximum amount for the present value of future economic loss it would have upheld as not excessive is $9,000,000.00. This does not mean that a new trial with new evidence and a new jury could not produce a higher or lower sustainable award. The court orders that the plaintiff accept a remittitur of the compensatory damage award for the present value of future economic loss in the amount of $5,500,000.00 (to $9,000,-000.00), or a new trial is granted on that issue. *Petramale v. Local No. 17 of Laborers' Int'l Union of North America*, 847 F.2d 1009 (2d Cir.1988).

Therefore, it is ORDERED that:

1. Items 1, 2, and 4 of the court's order dated and filed January 8, 1993, are reaffirmed;

2. Whitco's motion pursuant to Rule 59 for a new trial is granted with respect to

the issue of present value of future economic loss, except that the plaintiff's attorneys may file with the Clerk an acceptance of a remittitur of $5,500,000.00 ($14,500,000.00 reduced by $5,500,000.00 to $9,000,000.00) on the award of present value of future economic loss;

3. In the event the plaintiff's attorneys file an acceptance of the remittitur on or before February 15, 1993, the clerk shall file a second amended judgment in the sum of $12,750,940.62 ($6,000,000.00 plus $9,000,000.00 equals $15,000,000.00 minus $2,249,059.38), and Whitco's motion for a new trial shall be denied; and

4. In the event the plaintiff's attorneys do not file an acceptance of the remittitur on or before February 15, 1993, the new trial will commence on April 19, 1993, in Albany, New York. A pretrial conference will be conducted at 10:30 A.M. with jury selection to start at 11:00 A.M. Each party shall file a witness list, an exhibit list, trial memorandum, and proposed requests to charge on or before March 15, 1993, and any reply memorandums shall be filed on or before April 1, 1993.

IT IS SO ORDERED.