HYDRO INVESTORS, INC., Plaintiff,

v.

TRAFALGAR POWER INC.; Marina Development, Inc.; and Arthur Steckler, Defendants.

Trafalgar Power Inc., Plaintiff,

v.

Neal Dunlevy and Stetson–Harza Corp., Defendants.

Nos. 89–CV–227, 89–CV–1027.

United States District Court, N.D. New York.

Sept. 3, 1999.

---

2. The Court expresses no opinion whether plaintiff violated the ordinance.

William R. Morgan & Associates, P.C., Syracuse, NY (William R. Morgan, of counsel), for Hydro Investors, Inc. and Neal Dunlevy.

Harris Beach & Wilcox, LLP, Rochester, NY (Paul J. Yesawich, III, Joseph D. Picciotti, of counsel), for Trafalgar Power, Inc., Marina Development, Inc., and Arthur Steckler.

Harter, Secrest & Emery LLP, Rochester, NY (Richard E. Alexander, of counsel), for Stetson–Harza Corp.,

**MEMORANDUM–DECISION and ORDER**

HURD, United States Magistrate Judge.

## I.  INTRODUCTION

The parties initiated these actions in 1989 after disputes arose regarding the design and development of several hydro-electric power plants in central and northern New York State.  The actions were consolidated for trial.  A jury trial was held in Utica, New York, from March 22, 1999, through April 14, 1999.

In the lead case, 89–CV–227, judgment was entered upon the jury verdict for defendants Arthur Steckler, Marina Development, and Trafalgar Power, Inc. ("Trafalgar Power")[1] against plaintiff Hydro Investors, Inc. ("Hydro Investors") dismissing the complaint. In the consolidated case, 89–CV–1027, judgment was entered upon the jury verdict for plaintiff Trafalgar Power against defendants Stetson–Harza Corp. ("Stetson–Harza") and Neal Dunlevy ("Dunlevy") jointly and severally in the amount of $7,600,000.00.[2]  Judgment was further entered for Stetson–Harza and against Trafalgar Power on its counterclaim in the sum of $22,518.00 with interest from September 1, 1987, in the sum of $38,880.74, for a total sum of $61,398.74.

Presently to be decided are the post trial motions of the parties. In 89–CV–227, Hydro Investors moves to set aside the verdict and for judgment notwithstanding the verdict or a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.  TPI opposes the motion.

In 89–CV–1027, Stetson–Harza also moves for judgment notwithstanding the

---

1. Steckler, Marina Development and Trafalgar Power will be referred to collectively as "TPI."

2. The jury assessed damages in the amount of $6 million on the Ogdensburg project and $3.5 million on the Forestport project.  However, the jury found that Trafalgar Power was twenty percent comparatively negligent.  Accordingly, the total verdict of $9.5 million was reduced by twenty percent, for a final amount of $7.6 million.

verdict or a new trial pursuant to Rules 50 and 59. Dunlevy joins Stetson–Harza's motion to the extent that it does not implicate wrongdoing on his part. Trafalgar Power opposes this motion, and Stetson–Harza replied in further support. Further, Trafalgar Power moves to amend the judgment to add prejudgment interest. Stetson–Harza opposes the motion, and Trafalgar Power replied in further support.

Oral argument on the motions was heard on June 10, 1999, in Utica, New York. Decision was reserved.

## II. FACTS

The following recitation of the facts includes only as much detail as is necessary for resolution of the pending motions. Dunlevy was employed as an engineer and in management capacities by Stetson–Harza. TPI contracted with Stetson–Harza, through contacts with Dunlevy, for engineering design and licensing services relating to development of several hydroelectric power projects. The projects at issue here are those located at Forestport and Ogdensburg, New York. Other projects with which the parties to these actions were involved include Adams, Kayuta Lake, Herkimer, and Cranberry Lake.

Dunlevy also performed engineering services for TPI as an independent individual and, as the principal of Hydro Investors, entered into a partnership/joint venture agreement with TPI regarding the development and future management of the projects. Dunlevy left the employ of Stetson–Harza in 1987. However, the jury accepted TPI's evidence showing that Dunlevy acted within the scope of his employment at Stetson–Harza with respect to the time period and engineering services that were allegedly negligent, having answered a special interrogatory to that effect. The jury further found that Dunlevy did commit engineering malpractice in connection with the licensing or development of both the Forestport and Ogdensburg power projects.

The negligence complained of consisted of improperly measuring (or estimating rather than measuring) the sites, resulting in an estimated production significantly higher than actual production after the plants were operational. Trafalgar Power adduced evidence at trial showing the optimum production levels at the plants given the best possible operating conditions. There is no possibility that the plants can be altered in some fashion in order to bring production levels up to the Dunlevy estimates. In fact, Trafalgar Power did some excavating work at Ogdensburg to increase production levels, but even with the increase production was still significantly lower than that estimated by Dunlevy and Stetson–Harza. The conditions at the plant sites, including terrain, water flow, wildlife habitat, and so forth, prevent any further improvements that would increase production. In short, it is impossible for the Forestport and Ogdensburg power plants to produce the estimated amounts of power. Stated differently, regardless of how the plants were designed and built, they could never produce the amounts of energy projected. Trafalgar Power relied upon those energy projections in making decisions to invest in the power plants.

## III. DISCUSSION

### A. Standard

1. Rule 50(a)

■ Judgment as a matter of law can only be granted on a claim if that claim "cannot under controlling law be maintained." Fed.R.Civ.P. 50(a)(1). Judgment as a matter of law is to be granted "only when, viewing the evidence most favorably to the [nonmoving party], there can be but one conclusion as to the verdict that" a reasonable jury could have reached. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 59–60 (2d Cir.1993) (citations and quotations omitted); *Slade v. Whitco Corp.*, 811 F.Supp. 71, 73 (N.D.N.Y.), *aff'd*, 999 F.2d 537 (2d Cir.1993). "The nonmovant must

be given the benefit of all reasonable inferences." *Weldy,* 985 F.2d at 60. Moreover, on a post-trial motion-for judgment as a matter of law, the moving party must have fulfilled the procedural prerequisite of moving for judgment as a matter of law before the case was submitted to jury. *See* Fed.R.Civ.P. 50(a)(2), (b); *Slade,* 811 F.Supp. at 73.

### 2. Rule 59

■ On a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, "the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978). However, the mere fact that the trial judge may not agree with the jury's verdict is no reason alone to grant a new trial. *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983). Grant of a new trial is warranted only where the court " 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Produc., Inc.,* 861 F.2d 363, 370 (2d Cir.1988)).

### B. Hydro Investors' Motion

Hydro Investors moves to set aside the verdict and for judgment notwithstanding the verdict or a new trial. Hydro Investors first argues that the jury's finding of a joint venture for the Forestport, Adams, and Kayuta Lake is contradictory to its finding that there was no breach of contract by TPI with regard to these three projects. Hydro Investors further argues that the jury's failure to find breach of contract was inconsistent with the facts presented at trial and demonstrates a "gross misunderstanding" of partners' duties to each other. A careful review of the evidence presented at trial reveals that Hydro Investors' arguments fail under either a Rule 50 or Rule 59 standard. The

jury's finding in favor of TPI and against Hydro Investors must stand. *See* Fed. R.Civ.P. 50, 59.

### C. Stetson–Harza's Motion Regarding Damages

Stetson–Harza first argues that Trafalgar Power failed to prove damages by any established methodology for recovery, warranting dismissal of the claim under either Rule 50 or 59. Stetson–Harza quotes *Brushton–Moria Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.,* 91 N.Y.2d 256, 261–62, 669 N.Y.S.2d 520, 692 N.E.2d 551 (1998), for the proposition that in an engineering malpractice case "the appropriate measure of damages is the cost to repair the defects or, if the defects are not remediable, the difference in value between a properly constructed structure and that which was in fact built." The conduct complained of in this case is that Dunlevy and Stetson–Harza over-estimated the energy production potential of the hydroelectric plants.

Trafalgar Power posits that it relied upon, and the jury accepted, the theory that the diminution in value it experienced because the plants could not produce the amounts of energy estimated is measured by the difference between the revenue resulting from the plants as built producing optimum amounts of energy and the revenue it expected based upon the production estimates. Moreover, Trafalgar Power does not suggest that there is a flaw in the design or construction of the plants. It relies solely upon the improper estimates of energy production as its ground for relief. Trafalgar Power, by the introduction of expert testimony, set forth the estimated energy production, the optimum energy production, and the difference in revenues with the plants producing energy at optimum or as estimated. That difference in revenue directly reflects, according to Trafalgar Power, the diminution in value of the plants it suffered as a result of the engineering malpractice of Dunlevy and Stetson–Harza.

Generally damages in a engineering malpractice claim are measured by the cost to repair the defect, or if irreparable, the difference in value between a properly constructed structure and the structure as it was built. *Brushton–Moira Cent. Sch. Dist.,* 91 N.Y.2d at 261–62, 669 N.Y.S.2d 520, 692 N.E.2d 551. The purpose of compensatory damages is to place the injured party in the same position in which it would have been but for the negligence. *Id.* at 262, 669 N.Y.S.2d 520, 692 N.E.2d 551. Damages must be proven with reasonable certainty, and not be based upon speculation or assumptions. *Levy v. Bessemer Trust Co., N.A.,* No. 97 CIV. 1785(JFK), 1999 WL 199027, at *4 (S.D.N.Y. Apr.8, 1999).

There is no question that given the conditions at the sites the plants cannot be altered to produce the amount of energy estimated by Dunlevy and Stetson–Harza. Thus, the cost of repair method of proving damages is unavailable to Trafalgar Power.

Given the irreparability of the plants, Trafalgar Power's damages should be measured by the difference in value between the plants as constructed and if properly constructed. *See id.* at 261–62, 692 N.E.2d 551. The difficulty with this measure of damages is that there was no allegation of improper construction. Moreover, the plants cannot be "properly constructed" to produce the estimated amounts of energy because of the physical limitations at the sites. However, Trafalgar Power set forth at trial its method of determining the difference in value of the plants had they produced the estimated amounts of energy and the value of the plants as constructed.

The evidence adduced by Trafalgar Power in this regard included the following. Dunlevy estimated that the Ogdensburg plant would produce 16,600,000 kilowatt hours of electricity annually. The actual ten-year average annual energy produced was 8,900,000 kilowatt hours. Under optimum conditions for energy production, the Ogdensburg plant is capable of producing 11,460,000 kilowatt hours, after the excavation to improve production. Before excavation took place in 1993, the plant was optimally capable of producing only 9,700,000 kilowatt hours.

Trafalgar Power's argument to the jury regarding damages relied upon the difference between the optimal annual production amount (11,460,000 kilowatt hours) and the estimated annual production amount (16,600,000 kilowatt hours). Trafalgar Power then argued that the Niagara Mohawk contract rate per kilowatt hour should be applied to the difference in production amounts, resulting in the annual monetary damages it suffered as a direct and consequent result of the malpractice. Trafalgar Power set forth its proof of damages regarding the Forestport plant in a similar manner, except that excavation was not a factor at the Forestport site.

In contrast, Stetson–Harson presented no damages testimony in its defense.

Stetson–Harza argues that the damages proof was speculative and that Trafalgar Power did not mitigate damages. Trafalgar Power relied upon production amounts testified to by its expert witnesses. These energy production numbers were not seriously controverted by Dunlevy or Stetson–Harza. Further, Trafalgar Power relief upon the Niagara Mohawk contract rate, a guaranteed rate per kilowatt hour for any energy produced during the applicable time period, for its calculations of revenue. The proof of damages was not speculative. Neither were the damages unlimited, as Trafalgar Power's proof was limited to damages suffered through the year 2000, the end of the Niagara Mohawk power contract. By relying upon the optimum production figures, with excavation (at Ogdensburg), rather than upon the actual average production or the optimum prior to excavation (at Ogdensburg), Trafalgar Power "built in" mitigation of its damages.

The loss of revenue for the thirteen year period from 1988–2000 represents the difference in value of the power plants as

constructed and the value of power plants "properly constructed" so as to produce the projected energy and revenue levels. Under the unique fact situation of this case, where it was impossible to "properly construct" the power plants, there is no other method which would approach placing Trafalgar Power in the same position in which it would have been but for the negligence of Dunlevy and Stetson–Harza. Even so, it does not provide compensation for losses after the end of the Niagara Mohawk contract in 2000 nor for continuing to be the owner of power plants which, because of the low power outputs, are not economically feasible.

■ It cannot be said that in viewing the evidence in the light most favorable to Trafalgar Power that a reasonable jury could only have found in favor of Stetson–Harza. *See* Fed.R.Civ.P. 50(a). Accordingly, judgment as a matter of law cannot be granted. *See id.*

■ Similarly, a new trial is not warranted. *See* Fed.R.Civ.P. 59. After weighing the evidence adduced at trial, the jury verdict was not seriously erroneous or a miscarriage of justice. *See id.*

### D. Trafalgar Power's Motion for Pre-judgment Interest

Trafalgar Power moves to amend the judgment in 89–CV–1027 to include prejudgment interest at the statutory rate of nine percent pursuant to New York Civil Practice Law and Rules § 5001(a). Trafalgar Power posits that, as its claim accrued no later than January 1, 1988, interest should be calculated from that date.

■ New York law governs any award of prejudgment interest in this malpractice action brought under diversity jurisdiction. *Spector v. Mermelstein*, 485 F.2d 474, 481 (2d Cir.1973). In negligence cases affecting property interests an award of prejudgment interest is mandatory pursuant to § 5001(a). *Id.* at 482.

■ Stetson–Harza argues that no property interest of Trafalgar Power was involved in the damages award in this case. It is unnecessary, however, to decide that issue because even assuming, arguendo, that § 5001(a) applies, Trafalgar Power is not entitled to prejudgment interest.

Trafalgar Power sought damages covering the period of years from January 1, 1988, through the thirteen-year contract period with Niagara Mohawk. Trafalgar Power's damages proof consisted of energy production shortfalls, and resulting revenue losses, for each year. However, the jury award for each plant consisted of a lump sum covering all years during which Trafalgar Power suffered such losses. Trafalgar Power never sought a special verdict form separately listing damages for each year. It also never requested an instruction to the jury requiring separate findings for individual years. It would be patently unjust to award interest for damages suffered, say in 1998, beginning in 1988. *See Morse v. Swank, Inc.*, 520 F.Supp. 829, 830 (S.D.N.Y.1981) (it is not proper to penalize the tortfeasor by calculating interest from a date prior to the date that the harm occurred), *aff'd*, 688 F.2d 816 (2d Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). Moreover, to now somehow arbitrarily choose dates from which to calculate interest, or to allocate the lump sum damage award to individual years, would be to engage in pure speculation. This, of course, cannot be done. *See Deligiannis v. PepsiCo, Inc.*, 757 F.Supp. 241, 259 (S.D.N.Y.1991) (damages cannot be speculative). Accordingly, no prejudgment interest can be awarded.

### E. Remaining Issues

The remaining issues raised in the motions have been considered and are found to be without merit.

## IV. CONCLUSION

Neither Hydro Investors or Stetson–Harza are entitled to judgment as a matter

of law or a new trial. Trafalgar Power is not entitled to prejudgment interest. Accordingly, it is

ORDERED that

1. The motion to set aside the verdict and for judgment as a matter of law or for a new trial filed by Hydro Investors, Inc. in case 89–CV–227 is DENIED;

2. The motion for judgment as a matter of law or for a new trial filed by Stetson–Harza in case 89–CV–1027 is DENIED; and

3. The motion to amend the judgment filed by Trafalgar Power, Inc. in case 89–CV–1027 is DENIED.

IT IS SO ORDERED.