896 F.Supp. 100 (1995)
Michael BECKER, Plaintiff,
v.
NATIONAL HEALTH PRODUCTS, INC., Defendant.
No. 93-CV-1026.
United States District Court, N.D. New York.
September 5, 1995.
*101 Sweeney & Calabrese, White Plains, NY (Robert J. Lucchese, of counsel), Eli B. Basch, Kingston, NY, for plaintiff.
Thorn & Gershon, Albany, NY (Paul J. Catone, of counsel), for defendant.

MEMORANDUM-DECISION & ORDER
HURD, United States Magistrate Judge.
This matter is before the court pursuant to defendant's motions in limine. Defendant seeks to preclude admission of plaintiff's proffered expert testimony as to causation, as well as Food and Drug Administration ("FDA") complaint records. Plaintiff filed responses in opposition to the motions, and defendant replied. Oral arguments were heard by the court.

FACTS
Defendant National Health Products, Inc. ("National Health") made and distributed Hot Stuff "anabolic activator." The product is touted as a muscle-building amino acid supplement for body builders. Plaintiff ingested Hot Stuff according to the label directions for a period of approximately two months. Thereafter, plaintiff suffered a perforated diverticulum,[1] and underwent colon resection and colostomy surgery. Plaintiff claims that his diverticulosis and diverticulitis was caused by his ingestion of Hot Stuff, and proffers the testimony of two expert witnesses. Plaintiff further claims that National Health knew of the danger posed by its product, and proffers reports of complaints made to the FDA in support.
Hot Stuff contains Mexican wild yams, digestive enzymes, sterol complex, yohimbe bark, smilax and pyridoxine. The proffered testimony of plaintiff's two experts, Drs. Victor Herbert and Heidi Goldberg, will be discussed. The qualifications of the two experts are not at issue.

1. Dr. Victor Herbert

Dr. Herbert's expected testimony, derived from deposition testimony, is as follows. Dr. Herbert stated his opinion, with a reasonable degree of medical certainty, that plaintiff did not have diverticula prior to taking Hot Stuff. Hot Stuff contains digestive enzymes, which caused a weakening of plaintiff's intestinal wall. Diverticula were then formed by increased digestinal pressure acting on the weakened intestinal wall. Mexican wild yams, also found in Hot Stuff, contain Diosgenin, a pharmacologic steroid precursor of adrenocorticoids, which prevent inflammation from healing. The inflammation in this case was in the diverticula, and failure to heal led to the perforation of a diverticulum. Ginseng is also an ingredient of Hot Stuff. A variety of ginseng contains Diosgenin, which could also have had the same effect, of preventing healing, as did the Diosgenin found in Mexican wild yams.
Hot Stuff contains free amino acids, in particular lysine, which was declared not Generally Recognized as Safe (non-"GRAS") by the FDA in 1974. However, Dr. Herbert was not aware of any correlation between the free amino acids and diverticulosis or diverticulitis.
Dr. Herbert based his opinion that plaintiff did not have diverticulosis prior to taking Hot Stuff on plaintiff's age. Since plaintiff was in his twenties when he had diverticulitis, the progressive formation of diverticula with increasing age could not have been a factor in development of plaintiff's diverticulosis. Thus, Dr. Herbert ruled out the usual causes of diverticulosis and diverticulitis: constipation, low fiber diet, or genetic predisposition, usually not expressing itself until age fifty or older. Further, Dr. Herbert attributed plaintiff's diverticulosis and diverticulitis to the steroid component of Mexican wild yams and the digestive enzymes, based upon his review of plaintiff's medical records, review of several medical publications, including Goodman & Gillman, The Pharmacological Basis of Therapeutics, and the known pharmacologic actions of catabolic steroids and digestive enzymes.

2. Dr. Heidi Goldberg

The expected testimony of Dr. Goldberg, derived from her deposition testimony, follows. *102 As with Dr. Herbert, Dr. Goldberg is expected to testify that plaintiff did not have diverticulosis prior to ingesting Hot Stuff. Dr. Goldberg reached this conclusion based upon plaintiff's age of 26 years, lack of diverticulosis or similar diseases in plaintiff's family history, and no reported cases of diverticulosis in someone plaintiff's age. Her clinical experience spanning six years and involving 10,000 patients, including colonoscopic examination of patients between twenty and thirty years of age, and never seeing a diverticulum in a patient in plaintiff's age group also played a role in that conclusion.
Dr. Goldberg is also expected to testify that plaintiff's diverticulosis, diverticulitis, and diverticulum perforation was caused by Hot Stuff. She lists digestive enzymes, Mexican wild yam, yohimbe bark, Smilax, Sterol complex, ginseng, and pyridoxine as Hot Stuff ingredients which contributed to plaintiff's injury. Mexican wild yam, yohimbe bark, Smilax, ginseng, and Sterol complex contain catabolic steroids, which cause inflammation of the colon and weakness in the colonic musculature. There are documented cases of steroids producing ulcers and localized areas of inflammation in the colon. Continued use of steroids also prevents inflammation from healing.
The digestive enzymes, pancreatin, amylase, bromelain, and papain, made a two part contribution to plaintiff's injury. First, the digestive enzymes digest the colonic mucosa, weakening the intestinal wall. Second, the digestive enzymes reduce the amount of fat in the stool, thus decreasing the bulk of the stool. When the stool bulk is decreased, constipation results. The constipation then irritates the intestinal wall and causes increased intraluminal pressure. The increased intraluminal pressure leads to formation of diverticulum at areas where the intestinal wall is weakened.
Dr. Goldberg bases these findings upon research and clinical experience. Peer-reviewed literature regarding hyperamylasemia, or excessive amylase, document colonic motility disorders. In clinical practice, papain is used by physicians to dissolve bezoars.[2] It is this same action by which Dr. Goldberg opines that the intestinal wall is broken down.
Dr. Goldberg also names the ingredient pyridoxine as contributing to plaintiff's diverticulosis, diverticulitis, and perforation. Pyridoxine, according to Dr. Goldberg, decreases intestinal motility, leading to increased intraluminal pressure, which in turn leads to diverticulosis. Dr. Goldberg opines that these ingredients all played a part in plaintiff's injury in a somewhat circular manner. Weakening of the intestinal wall, along with increased intraluminal pressure, can cause diverticulum to form, especially in the colon where there are many weak areas near blood vessels normally. Inflammation, caused by steroids, abrasion from other sources, and constipation can lead to diverticulitis. Continued inflammation and failure to heal can then result in perforation. Further, inflammation, such as is caused by steroid use, can leave the intestinal wall open to weakening by the digestive enzymes, leading to diverticulum formation.
Dr. Goldberg's opinions are based upon review of the records from plaintiff's two hospitalizations, research of all Hot Stuff ingredients, textbooks, FDA complaint files, journal articles, plaintiff's family history, plaintiff's age, her clinical experience, and the lack of any documented case of diverticulosis in someone plaintiff's age. However, there is no peer-reviewed documentation that any of the ingredients in Hot Stuff, individually or in combination, cause diverticulosis, diverticulitis, or diverticulum perforation.

DISCUSSION

A. Expert Testimony
Under the federal rules of evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, ___, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). Thus, the trial court, in order to fulfill its "gatekeeper role, must preliminarily assess "whether the reasoning or methodology *103 underlying the testimony is scientifically valid and ... properly can be applied to the facts in issue." Id., 113 S.Ct. at 2796; McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir.1995) (quoting Daubert).
Among the factors which the trial court may consider in making this assessment are whether the theory has been or could be tested, whether it has been subjected to peer review and publication, and whether the theory enjoys general acceptance in the relevant scientific community. Daubert, ___ U.S. at ___ - ___, 113 S.Ct. at 2796-97; McCullock, 61 F.3d at 1042. Neither peer review and publication nor general acceptance are dispositive in the reliability assessment. Daubert, ___ U.S. at ___, 113 S.Ct. at 2797. Moreover, the Daubert Court recognized that theories which are "too particular, too new or of too limited interest" may not be published. Id. Thus, the trial court must make a flexible inquiry, focusing "solely on principles and methodology, not on the conclusions that they generate." Id.
Defendant here argues that the expert opinions of Drs. Herbert and Goldberg are based upon speculation, and are therefore inadmissible under Daubert. Defendants point to the lack of any peer review or publication of a theory that any ingredient of Hot Stuff causes diverticulosis. However, Dr. Herbert based his opinion upon over thirty years of experience as a physician, Board certified internist and nutritionist, and research into the ingredients of Hot Stuff and their pharmacological actions, and review of plaintiff's medical records. Additionally, Dr. Herbert ruled out the usual causes of diverticulosis to make his conclusion about the causation of plaintiffs injury.
Similarly, Dr. Goldberg researched the ingredients of Hot Stuff and the usual causes of diverticulosis and diverticulitis. She made the causation determination based upon her research, review of plaintiff's medical history and hospitalization records, and clinical experience with 10,000 patients, solely in gastroenterology. Thus, both Drs. Herbert and Goldberg based their opinions on scientific knowledge, and are sufficiently reliable to constitute admissible expert testimony. See Daubert, ___ U.S. at ___ - ___, 113 S.Ct. at 2796-97; McCullock, 61 F.3d at 1042. As recently decided by the Second Circuit, the fact that the expert's theories were not subject to peer review and publication or general acceptance goes to the weight of their testimony rather than its admissibility. See McCullock, 61 F.3d at 1042.
In McCullock the defendant objected to admission of expert testimony that hot melt glue fumes caused throat polyps. Defendant argued that no piece of medical literature was cited which made that conclusion, and that the expert's use of differential etiology to reach his conclusion was not scientific under Daubert. The Second Circuit rejected defendant's arguments, holding that the factors upon which the expert based his conclusion constituted scientific knowledge under Daubert and the testimony was properly admitted. McCullock, 61 F.3d at 1042. The expert relied upon his care and treatment of the plaintiff, review of plaintiff's medical history, review of plaintiff's medical and surgical reports, pathological studies, review of defendant's Material Safety Data Sheet on the hot glue, his training and experience, and use of the scientific analysis of differential etiology, and reference to various scientific medical treatises. Id. at 1042. Defects in differential etiology, the process of listing all possible causes then eliminating all but one, as a methodology, was found to go to the weight of the expert's opinion rather than its admissibility. Id. at 1042 (citing Daubert, ___ U.S. at ___, 113 S.Ct. at 2798).
Similarly, in this case both Drs. Herbert and Goldberg used the differential etiology methodology as a factor in forming their opinions. Although never using the "differential etiology" terminology, both doctors clearly considered all possible causes of plaintiff's diverticulosis then eliminated all but one. Moreover, they both based their opinions on a variety of factors, including medical history, reference to scientific and medical treatises and articles, and their training and experience. Thus, lack of other published works making the same conclusion is not fatal to the sciential nature of the experts' principles and methodology. See Daubert, ___ U.S. at ___, 113 S.Ct. at 2797; McCullock, 61 F.3d at 1042.

*104 B. FDA Complaint Reports

Defendant moves the court to exclude FDA complaint/injury reports because the reports are inadmissible hearsay and their prejudicial effect clearly outweighs any probative value. These records, however, clearly fall within the public records and business records exceptions. See Fed.R.Evid. 703, 803. Moreover, the probative value of these records is not substantially outweighed by the danger of unfair prejudice. See id. 403.

CONCLUSION
The proffered testimony of plaintiff's qualified experts, Victor Herbert, M.D., J.D., and Heidi Goldberg, M.D., as well as FDA complaint/injury reports, are admissible into evidence.
Accordingly, it is hereby
ORDERED, that defendant's motions in limine are DENIED.
IT IS SO ORDERED.
NOTES
[1] Diverticulosis is a condition consisting of multiple outpouches, or diverticulum, of the intestinal wall. Stedman's Medical Dictionary 513 (26th ed. 1995). A diverticulum may become inflamed, causing diverticulitis, and may then perforate. Id.
[2] A bezoar is a conglomerate of foreign material, such as vegetable matter, hair, or a combination of vegetable matter and hair. 26 Stedman's Medical Dictionary 201 (1995).