Bernard C. BUNT, Jr. and Laura
L. Bunt, Plaintiffs,

v.

ALTEC INDUSTRIES, INC., Defendant.

ALTEC INDUSTRIES, INC.,
Defendant/Third–Party
Plaintiff,

v.

OTSEGO RURAL ELECTRIC CO–
OPERATIVE, INC., Third–
Party Defendant.

No. 95–CV–73.

United States District Court,
N.D. New York.

April 18, 1997.

Gozigian, Washburn & Clinton, Cooperstown, NY (Edward Gozigian, of counsel), for Plaintiffs.

Felt, Evans, Panzone, Bobrow & Hallack, LLP, Clinton, NY (E. Porter Felt, of counsel), for Defendant and Third-party Plaintiff.

Carl J. Cochi, Utica, NY, for Third-party Defendant.

## MEMORANDUM DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

On June 7, 1994, in the town of Middlefield, Otsego County, New York, the plaintiff, Bernard C. Bunt, Jr. ("Bunt" or "plaintiff"), in his capacity as a lineman for the third-party defendant, Otsego Electric Cooperative, Inc. ("Otsego"), was aloft in a bucket of a digger derrick[1] manufactured by the defendant, Altec Industries, Inc. ("Altec"). The plaintiff elevated the bucket through the use of controls attached to the boom of the digger derrick. In elevating the bucket to a point located on a power line pole, the controls became tangled in the power wires causing the bucket to break free from the boom of the digger derrick, falling approximately thirty to thirty-five feet to the ground. As a result, the plaintiff sustained severe and permanent injuries to his right foot.

In July 1995, the plaintiff commenced an action against Altec citing jurisdiction under 28 U.S.C. § 1332. The complaint maintained claims for negligence, breach of warranty, and strict products liability. Also included in the complaint was a claim for loss of consortium on behalf of the plaintiff Laura L. Bunt ("Mrs. Bunt"). Altec denied the material allegations in the complaint, raised certain affirmative defenses, including comparative negligence, and commenced a third-party action against Otsego for indemnity and/or contribution. Otsego denied the material allegations in the third-party complaint.

The case was tried in Utica, New York, between December 9, 1996, and December 13, 1996. The basic theory against Altec was that it was responsible for the accident because it designed, manufactured, and sold the digger derrick without a guard or shield over the bucket controls. At the conclusion of the trial, the jury returned a verdict in favor of the plaintiffs on all three claims. The jury also found the plaintiff comparatively negligent, assessing his fault at twenty percent (20%), and no negligence on the part of Otsego.

---

1. A digger derrick is a machine manufactured and designed to dig holes for the placement of utility poles. Mechanically, the digger derrick has a boom which is made up of three stages. The second and third stage have the ability to extend, allowing the digger derrick to perform its various functions. Though, with a slight modification, a bucket can be attached to the digger derrick's boom, allowing it to elevate personnel to a height on a utility pole. A very similar machine, known as an aerial device, also maintains a boom with three stages. However, the aerial device is equipped with a permanent bucket. and is manufactured for the sole purpose of elevating personnel.

The jury awarded total damages of One Million Six Hundred Ninety-five Thousand Four Hundred Seventy-four Dollars ($1,695,-474.00) to the Plaintiffs. The award was broken down into Eight Hundred Fifty Thousand Dollars ($850,000.00) past and future pain and suffering; Six Hundred Seventeen Thousand, One Hundred Ninety-seven Dollars ($617,197.00) past and future loss of earnings; Twenty-eight Thousand, Two Hundred Seventy-seven Dollars ($28,277.00) medical expenses to Bunt; and Two Hundred Thousand Dollars ($200,000.00) past and future loss of services to Mrs. Bunt. The award was reduced by twenty percent (20%), representing plaintiff's comparative fault. Following this computation, judgment against Altec was entered in favor of the plaintiff in the sum of One Million One Hundred Ninety-six Thousand Three Hundred Seventy-nine and 20/100 Dollars ($1,196,379.20); in favor of Mrs. Bunt in the sum of One Hundred Sixty Thousand Dollars ($160,000.00); and dismissing the third-party complaint.

## II. *MOTIONS*

Altec has moved for an order pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, setting aside the verdict in favor of the plaintiffs and the judgment entered thereon, and directing that judgment be entered in favor of Altec on the ground that the jury's verdict was against the weight of the evidence. In the alternative, Altec has moved for an order pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, setting aside the verdict and the judgment entered thereon, and granting Altec a new trial on the grounds that the jury's verdict was against the weight of the evidence in both the main and third-party actions. Additionally, Altec maintains that it is entitled to a new trial because the damages awarded to the plaintiffs were excessive.

## III. *DISCUSSION*

### A. *Rule 50(b)—Judgment as a Matter of Law.*

#### 1. *Standard*

■ This court can only grant judgment as a matter of law on a claim if that claim "cannot under controlling law be maintained." Fed.R.Civ.P. 50(a)(1). Judgment as a matter of law is to be granted "only when, viewing the evidence most favorably to the [nonmoving party], there can be but one conclusion as to the verdict that reasonable men could have reached." *Weldy v, Piedmont Airlines, Inc.*, 985 F.2d 57, 59–60 (2d Cir.1993) (citations and quotations omitted); *Slade v. Whitco Corp.*, 811 F.Supp. 71, 73 (N.D.N.Y.), *aff'd*, 999 F.2d 537 (2d Cir.1993). "The nonmovant must be given the benefit of all reasonable inferences." *Weldy*, 985 F.2d at 60. The defendant fulfilled the procedural necessity of moving for judgment as a matter of law before the case was submitted to the jury.[2] *See* Fed.R.Civ.P. 50(a)(2), (b); *Slade*, 811 F.Supp. at 73.

#### 2. *Expert Testimony*

Altec requests that their motion pursuant to Rule 50(b) be granted because the plaintiffs have failed to prove that the digger derrick was defectively designed. Specifically, Altec argues that the plaintiffs failed to demonstrate via sufficient scientific evidence, by way of a qualified technical expert, that the lack of a guard on the upper controls of the digger derrick was a design defect.

■ Under the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony relating to "scientific, technical, or other specialized knowledge" if it will assist the jury in their

---

**2.** The Court notes that at the close of plaintiff's case, Altec made a motion pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure, requesting a directed verdict. Altec argued that the plaintiff failed to make out a prima facie case for negligent design, negligent manufacturing, and breach of warranty. This motion included an objection to Dr. Derby's expert testimony on the basis that it did not constitute sufficient expert testimony. The Court denied in part and granted in part the motion. The Court held that any allegations of a manufacturing defect as a basis for a strict liability claim, tort claim, or express warranty claim, were dismissed. However, the motion failed to mention an objection regarding the plaintiff's economic expert. Accordingly, pursuant to a motion under Rule 50(b), Altec waived their right to object to plaintiff's economic expert.

understanding of the evidence or a determination of a fact in issue. Fed.R.Evid. 702. "Liberality and flexibility in evaluating qualifications should be the rule ... the expert should not be required to satisfy an overly narrow test of his own qualifications." *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 226 (N.D.N.Y.1994), *aff'd,* 101 F.3d 682 (2d Cir.1996). However, the expert is also reasonably confined to his subject of expertise and further prohibited from offering an expert opinion on an entirely different field or discipline. *Id.* at 227 (*citing Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir.1991)).

■ Following the affirmation of a proposed expert as qualified, the Court must act as the "gatekeeper," ensuring that any scientific testimony admitted is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 597, 113 S.Ct. 2786, 2794–95, 2798–99, 125 L.Ed.2d 469 (1993).[3] However, the role as the gatekeeper is tempered by the liberal thrust of the Federal Rules of Evidence and the "presumption of admissibility." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995), *cert denied,* — U.S. ——, 116 S.Ct. 1869, 134 L.Ed.2d 966 (1996).

■ The admissibility of expert testimony involves a determination as to "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact." *Daubert*, 509 U.S. at 592, 113 S.Ct. at 2796. The determination entails the "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593, 113 S.Ct. at 2796. Therefore, such factors as peer review and publication, ability to be tested, rate of error,

and the general acceptance in the scientific community should be considered. *Id.* at 593–94, 113 S.Ct. at 2796–97; *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir.1995). However, these factors alone are not dispositive, ultimately the inquiry is "flexible," focusing on the "principles and methodology" rather than the conclusions generated. *Daubert*, 509 U.S. at 594–95, 113 S.Ct. at 2797–98. Additionally, the trial court has broad discretion in admitting expert testimony. *McCullock*, 61 F.3d at 1042.

■ Altec contends that the plaintiff's scientific expert, Stephen Derby, Ph.D. ("Derby"), should not have been allowed to offer expert testimony. It claims that Derby's testimony should have been stricken from the record because he failed to qualify as an expert witness under the test set out in *Daubert*. Altec further contends that Derby had "never seen, studied, worked with, [or] designed" a digger derrick, aside from a casual observation on November 18, 1996. (Porter Felt Aff. ¶15). As evidence that Derby was unqualified to give expert testimony, Altec notes Derby's failure to cite the most recent ANSI[4] standards in his report, and his apparent neglect to resolve the conflicting ANSI standards between aerial devices[5] and digger derricks. In addition, the defendant claims that while Derby concluded that the upper controls of the digger derrick needed to be covered with a guard, on cross examination he stated that he did not develop a prototype guard, prepare any drawings, or propose any ideas as to how a guard could be installed.

Derby, who lectures on design safety at the Rensselaer Polytechnic Institute, has a Ph.D. and a Masters degree in mechanical engineering. In addition to lecturing on de-

---

3. Although the *Daubert* case will be discussed at length, there is clearly some serious doubt whether it is even applicable to this situation. The expert's reliance upon his experience and training differs considerably from *Daubert's* methodology or technique requirements. *See Compton v. Subaru of America Inc.*, 82 F.3d 1513, 1519 (10th Cir.1996) (*Daubert* is applicable only when an expert relies on some principle or method), *cert. denied,* — U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *Liriano v. Hobart Corp.*, 949 F.Supp. 171, 177 (S.D.N.Y.1996) (*Daubert* test not appropriate in cases where ex-

pert testimony is based upon experience or training, as opposed to methodology or technique); *Lappe*, 857 F.Supp. at 222.

4. The American National Standards Institute sets standards for particular pieces of equipment, including aerial devices and digger derricks. The Institute's purpose is to insure that any standard regarding equipment is consistent throughout the industry.

5. See supra Note 1 for a description of an aerial device, compared with a digger derrick.

sign safety, Derby also provides consulting services in the area of mechanical engineering. At trial, Derby's testimony focused primarily on the issue of a design defect regarding the upper controls of the digger derrick. Particularly, Derby offered an opinion which concluded that it was a design defect not to have a guard surrounding the upper controls of the digger derrick. Derby's testimony did not concern the viability, practicality, adequacy, or sufficiency of a proposed guard,[6] but only the design safety of lack of a guard. Thus, Derby's knowledge and experience in the area of design safety[7] gained through his education and training, qualify as "specialized knowledge," qualifying him as a suitable expert witness under Rule 702 of the Federal Rules of Evidence. *See McCullock*, 61 F.3d at 1042.

Derby's testimony also satisfies the test set out in *Daubert*. In order for Derby's testimony to be admissible, the reasoning underlying Derby's testimony must be scientifically valid and properly applicable to the facts in issue. *See Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796–97. The origin behind Derby's opinion is his scientific reasoning based upon years of experience and training in the field of mechanical engineering and design safety. Therefore, his opinion constitutes scientific knowledge which is sufficiently reliable and admissible as expert testimony. *See Becker v. National Health Prod., Inc.*, 896 F.Supp. 100, 103 (N.D.N.Y.1995). Also, the applicability of Derby's testimony is readily apparent. As discussed above, Der-

by's testimony focused upon the upper controls of the digger derrick and whether a design defect existed where controls were not guarded from an inadvertent actuation. It was Derby's testimony that the failure to shield the controls from an inadvertent actuation was a deficiency in the design and safety of the digger derrick. This opinion was paramount in deciding issues of common law negligence, breach of warranty, and strict products liability. Thus, it is manifest that an opinion, such as Derby's, on a central issue of the trial is applicable and will assist the trier of fact in their understanding of the evidence and their determination of facts in issue. *See Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796–97; *see also* Fed.R.Evid. 702. Accordingly, Derby's expert testimony was properly admitted.

■ Derby's unfamiliarity with the digger derrick, including his neglect to satisfactorily resolve the apparent contradiction between ANSI regulations for "aerial devices" and "digger derricks," goes to the weight and credibility of the expert's testimony rather than the question of admissibility. *See McCullock*, 61 F.3d at 1042; *Becker*, 896 F.Supp. at 103. These issues are proper for the scrutiny of cross-examination. *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 525–26 (2d Cir.1996); *McCullock*, 61 F.3d at 1042. Therefore, the alleged short comings of Derby's understanding of the digger derrick and the ANSI standards were proper for the jury's inspection on cross examination.[8]

---

**6.** These issues were addressed at trial through the testimony of an Altec employee. As a consultant to Altec, Frank Freudenthal testified that the company, on special order, manufactured and installed guards covering the upper controls of the digger derrick. He further stated that these guards were made of metal, fiberglass and plexiglass, and cost approximately Fifty Dollars ($50.00). Further, there was evidence that a digger derrick becomes, in effect, an aerial device when the bucket is in use and the upper controls on the aerial devices sold by Altec always have a cover or guard.

**7.** The argument that Derby was unfamiliar with the digger derrick is irrelevant. Derby's expert opinion goes to the issue of design safety. Taking Altec's argument to its logical consequence effectively limits expert testimony in similar circumstances to only situations where the expert is not only an expert on design safety, but also an

expert on the machine upon which a safety device could be equipped. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176–77 (5th Cir.1990) (witnesses allowed to testify on safety of brake design despite lack of personal design experience), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993); *Dixon v. International Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985) (design engineer permitted to testify on safety of crawler tractor despite lack of experience approving crawler tractor designs); *Wylie v. Ford Motor Co.*, 536 F.2d 306, 308 (10th Cir.1976) (knowledge of basic physics rendered a physicist competent to testify concerning the design safety of vehicle's ball jointed suspension).

**8.** Altec, in fact, vigorously cross-examined Derby regarding his knowledge, or lack thereof, pertaining to the digger derrick and the ANSI standards.

■ The jury found Altec liable under three separate claims of liability. These claims were negligence, breach of warranty, and strict products liability. In order for the jury's finding to be set aside as against the weight of the evidence, Altec must demonstrate that the jury's decision could not be supported by any fair interpretation of the evidence. *Slade,* 811 F.Supp. at 74 (citing *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038–39 (2d Cir.1992)). Rejecting Altec's argument that Derby was not a proper expert witness, leads this Court to the conclusion that Altec has failed to meet its burden. In light of the evidence presented at trial, the Court finds that the jury's verdict on liability against Altec was justifiable.

### B. *Rule 59(a)—New Trial*

#### 1. *Standard*

■ On a motion for a new trial, "the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978). However, the mere fact that the trial judge may not agree with the jury's verdict is no reason alone to grant a new trial. *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983). Grant of a new trial is warranted only where the court " 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)); *Slade,* 811 F.Supp. at 74.

#### 2. *Comparative Negligence*

Altec requests that the Court grant its motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure because the jury's determination that the plaintiff was only twenty percent (20%) comparatively negligent is against the weight of all credible evidence presented at trial.

■ In New York it is well settled that the issue of comparative negligence is a question of fact proper for the jury's determination. *Louise B.G. v. New York City Bd. of Educ.,* 143 A.D.2d 728, 730, 533 N.Y.S.2d 293 (2d Dep't 1988) (citing *Willis v. Young Men's Christian Ass'n of Amsterdam,* 28 N.Y.2d 375, 321 N.Y.S.2d 895, 270 N.E.2d 717 (1971)). Unless no rational support exists for this determination, Federal courts are reluctant to disturb the jury's conclusion because it is this determination of the percentage of fault that remains the function of the jury. *See Kreppein v. Celotex Corp.,* 969 F.2d 1424, 1426 (2d Cir.1992); *Dufur v, Lavin,* 101 A.D.2d 319, 327, 476 N.Y.S.2d 389 (3d Dep't) (Percentage of fault is generally matter for jury determination.), *aff'd,* 65 N.Y.2d 830, 493 N.Y.S.2d 123, 482 N.E.2d 919 (1985).

■ As stated above, the jury found both Bunt and Altec liable for the accident. The jury assessed fault at eighty percent (80%) on the part of Altec, and twenty percent (20%) on the part of the plaintiff. Altec maintains that the finding of only twenty percent (20%) liability is inconsistent with plaintiff's actions of willfully placing himself in danger by failing to wear his safety belt. It contends that had the plaintiff been wearing his safety belt, he would not have fallen to the ground and sustained the injuries claimed. There is no question that Bunt deliberately failed to wear the required safety belt at the time of the accident. However, Altec declined to present any expert testimony of what the plaintiffs injuries, if any, might have been had he been wearing his safety belt.

An analogy involving similar circumstances is where a claimant fails to use his seat belt while in an automobile accident. In New York, courts hold that the failure to use a seat belt while in an automobile is a factor to be considered by the jury when determining whether a plaintiff used due care to mitigate his damages. *Brodvin v. Hertz Corp.,* 487 F.Supp. 1336, 1338 (S.D.N.Y.1980); *Spier v. Barker,* 35 N.Y.2d 444, 449, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974); *Stein v. Penatello,* 185 A.D.2d 976, 587 N.Y.S.2d 37 (2d Dep't 1992); *DiMauro v. Metropolitan Suburban Bus Auth.,* 105 A.D.2d 236, 242–43, 483 N.Y.S.2d 383 (2d Dep't 1984). However, in order to raise the "seat belt defense," the defendant must present expert testimony. *Spier,* 35 N.Y.2d at 449, 363 N.Y.S.2d 916,

323 N.E.2d 164; *Cappadona v. New York,* 154 A.D.2d 498, 500, 546 N.Y.S.2d 124 (2d Dep't 1989); *Dowling v. Dowling,* 138 A.D.2d 345, 525 N.Y.S.2d 636 (2d Dep't 1988); *Karczmit v. New York,* 155 Misc.2d 486, 489, 588 N.Y.S.2d 963 (N.Y.Ct.Cl.1992). Although there was no requirement in this case that Altec offer such expert testimony, it was free to offer the opinion of an expert regarding what might, or might not, have happened if the plaintiff was wearing his safety belt at the time the bucket crashed to the ground. Instead, Altec relied on a lay investigative report, lay opinions, and their argument to the jury on the facts. Even with expert testimony on this issue, the Court would remain adverse to granting Altec's motion on this particular ground. Ultimately, it is for the jury to evaluate and accept or reject expert opinions. Without such expert testimony, this Court has no basis to find that the jury's verdict in allocating fault was "seriously erroneous" or "a miscarriage of justice." The jury's determination was based upon Bunt's entire activity that day, from the lack of a safety belt to operating the bucket, and will not be disturbed.

### 3. *Excessive Verdict*

Altec seeks a new trial on damages pursuant to Rule 59. It maintains that the verdict was excessive when measured by the evidence presented to the jury.[9]

■■■■ In a diversity case, the standard for setting aside a jury award is governed by state law. *Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2211, 2214, 135 L.Ed.2d 659 (1996); *Consorti v.* *Armstrong World Indus., Inc.,* 103 F.3d 2, 4 (2d Cir.1995). Specifically, a district court sitting in the state of New York must "determine whether the jury's verdict is within the confines set by [New York] state law." *See Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 259, 109 S.Ct. 2909, 2912, 106 L.Ed.2d 219 (1989). The applicable standard used in New York courts has been the "deviates materially" standard.[10] *See Consorti,* 103 F.3d at 4. Therefore, unless the verdict deviates materially from what would be considered reasonable compensation, the verdict will not be considered excessive. In determining what is excessive, federal courts will need to look to comparable state court cases where the awards were found not to be excessive. *See Martell v. Boardwalk Enters., Inc.,* 748 F.2d 740, 750 (2d Cir.1984).

■■■■ There is no question that the plaintiff sustained severe and permanent injuries which prevent him from returning to work at his position of Senior Field Representative. The injuries that the plaintiff experienced as a result of the accident were a right calcaneus fracture, right talus dislocation, right rotator cuff tear, left tarsometatarsal subluxation, and a left orbital facial laceration. In addition, the plaintiff underwent various surgeries to repair his foot following the accident. Also, he was 45 years old at the time of the accident. At the time of trial, he had a work life expectancy of fourteen years, and a life expectancy of 29.3 years.[11]

To review, the jury found damages in the sum of One Million Six Hundred Ninety-five Thousand Four Hundred Seventy-four Dollars ($1,695,474.00) for plaintiffs. Bunt received Eight Hundred Fifty Thousand Dol-

---

9. Altec additionally argues that the verdict was excessive because it was based upon testimony from an unqualified economic expert. It contends that Kenneth Reagles, Ph.D., erroneously assumed that the plaintiff could not work full time. This argument is based upon Altec's belief that Dr. Lynch testified that "he knew no reason why [the plaintiff] could not hold full-time employment." (Porter Felt Aff. ¶ 15). However, an examination of the record reveals that Dr. Lynch, in actuality, questioned whether the plaintiff could even return to part time work. It was the Doctor Lynch's opinion that, withstanding the plaintiff's pain, there were some jobs that the plaintiff could perform even on a part time basis. Consequently, it was the jury's decision to decide how much pain the plaintiff would experience

and how that would effect his capability of performing future jobs. Therefore, this Court is unwilling to upset the jury's determination on this issue.

10. Pursuant to New York, a jury verdict may not exceed that amount which "deviates materially from what would be reasonable compensation." N.Y.C.Pr.L.R. § 5501(c) (McKinney Supp.1997).

11. These figures are only statistical averages extracted from tables found in Appendix A and B of the New York Pattern Jury Instructions. (Vol. 1A, *New York Pattern Jury Instructions,* 3d ed.1997).

lars ($850,000.00) for past and future pain and suffering; Six Hundred Sixteen Thousand, Six Hundred Ninety-seven Dollars ($616,697.00) for past and future loss of earnings; and Twenty-eight Thousand, Two Hundred Seventy-seven Dollars ($28,277.00) for medical expenses. Mrs. Bunt's damages for past and future loss of services were Two Hundred Thousand Dollars ($200,000.00).[12] Upon comparing situations involving similar circumstances where state courts found the jury awards not to be excessive, this Court concludes that the jury's verdict did not deviate materially from reasonable compensation, and therefore, was not excessive.

The court in *Venable v. New York City Transit Auth.*, 165 A.D.2d 871, 560 N.Y.S.2d 341 (2d Dep't 1990), reduced the jury's verdict representing past and future pain and suffering of approximately Four Million Dollars ($4,000,000.00) on the basis that it was a material deviation from what would be reasonable compensation, and therefore excessive. *Id.* at 872, 560 N.Y.S.2d 341. The court held that the plaintiff "suffered ... a fractured tibia and degloving injury of the ankle, requiring substantial hospitalization and rehabilitation, and possibly necessitating amputation in the future." *Id.* It was the court's opinion that these facts merited an award of approximately One Million Five Hundred Thousand Dollars ($1,500,000.00) for past and future pain and suffering. *Id.* Additionally, the court awarded the plaintiff approximately Eight Hundred Thousand Dollars ($800,000.00) for her past and future loss of earnings. *Id.*

In *Stiles v. Batavia Atomic Horseshoes, Inc.*, 174 A.D.2d 287, 579 N.Y.S.2d 790 (4th Dep't 1992), *rev'd on other grounds*, 81 N.Y.S.2d 950, 597 N.Y.S.2d 666, 613 N.E.2d 572 (1993), the plaintiff, after having his hands crushed by a defective punch press which required subsequent corrective surgeries, was awarded a verdict for approximately One Million Seven Hundred Thousand Dollars ($1,700,000.00). *Id.* The plaintiff's injuries were permanent and severe, consisting of an amputation of three fingers of the right

hand, deformity of the left hand, and an overall sixty one percent (61%) permanent disability. *Id.* at 293, 579 N.Y.S.2d 790.

The plaintiff in *Cranston v. Oxford Resources Corp.*, 173 A.D.2d 757, 571 N.Y.S.2d 733 (2d Dep't 1991), after being struck by a car was awarded approximately One Million Five Hundred Thousand Dollars ($1,500,-000.00). Eight Hundred Fifty Thousand Dollars ($850,000.00) of the verdict represented the plaintiff's past and future pain and suffering, while approximately Six Hundred Fifty Thousand Dollars ($650,000.00) was awarded for past and future loss of earnings. *Id.* She suffered injuries to her leg and calf, requiring five surgeries which involved metal plates and pins to aid in the healing process. *Id.* at 758, 571 N.Y.S.2d 733.

The court in *Hill v. Muchow*, 178 A.D.2d 954, 579 N.Y.S.2d 254 (4th Dep't 1991), held that the verdict was not excessive where the plaintiff, after suffering permanent injuries to his ankle and foot, could not walk, stand, sit, or even lie down for long periods without experiencing pain. *Id.* at 955, 579 N.Y.S.2d 254. Based upon those facts, the jury returned a verdict for approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00), representing twenty-seven years of future pain and suffering. *Id.*

Finally, this court notes a case with very similar facts. In *Cappellini v. McCabe Powers Body Co.*, 713 F.2d 1 (2d Cir.1983), a plaintiff working in an aerial device as a lineman was awarded approximately One Million Seven Hundred Thousand Dollars ($1,700,000.00) for his injuries after falling to the ground following ejection' from the bucket of the device because of a hydraulic defect. *Id.* at 3. Three Hundred Fifty Thousand Dollars ($350,000.00) represented remuneration to the wife. *Id.* As a result of a forty foot fall, the plaintiff suffered permanent injuries. *Id.* The significance of this case is merely a matter of comparison of similar circumstances and awards.

The verdict was not excessive or against the weight of the evidence presented at trial. A review of cases presenting similar injuries

---

**12.** As noted above, both findings were reduced by the jury's determination that the plaintiff was twenty percent (20%) comparatively negligent.

and similar damage award verdicts, establishes that the jury's verdict was reasonable compensation for the injuries sustained by Bunt, and Mrs. Bunt's derivative claim.

### 4. *Third-Party Action*

Altec has also moved to set aside the jury's findings of no negligence on the part of Otsego and for a new trial in the third-party action. A review of the evidence demonstrates that the jury's verdict in favor of Otsego is supportable and should not be disturbed.

## IV. *CONCLUSION*

Accordingly, it is

ORDERED, that defendant's motions pursuant to Rule 50(b) and 59(a) are DENIED.

IT IS SO ORDERED.